UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 15-113-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CHRISTOPHER EVERETT ALLEN, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Following a jury trial in May 2016, Defendant Christopher Allen was convicted of various drug offenses, including distributing heroin and fentanyl, the use of which resulted in the overdose death of Chantel Nicole Alvarez.  Allen was sentenced to 365 months' imprisonment. [Record No. 40, p. 2]  The United States Court of Appeals for the Sixth Circuit affirmed Allen's convictions on appeal.  *United States v. Allen*, No. 16-6375, 2017 WL 5593506 (6th Cir. Nov. 21, 2017).  Allen now seeks a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.  [Record No. 51]  For the reasons that follow, Allen's motion for a new trial will be denied.

**I.**

Allen seeks a new trial based on what he characterizes as newly discovered evidence. To obtain a trial based on newly discovered evidence, the defendant must establish that

> (1) the new evidence was discovered after the trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence likely would produce an acquittal.

*United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991).

An attorney from the federal public defender's office represented Allen during his appeal. [*See* Record No. 44.] An investigator from that office interviewed an individual named Harmony Horan on January 20, 2017. [Record No. 51-5] Horan claimed to be an associate of both Allen and Alvarez and reported having used drugs with both of them in the past. Horan advised the investigator that Alvarez was using drugs with her and two other individuals (both named Sam) on the night that Alvarez died. Horan stated that the four of them bought drugs from Horan's supplier, Lily. Horan advised that, when they dropped Alvarez off at home, Alvarez still had some of the heroin they had purchased from Lily. Horan said that Alvarez seemed fine when they took her home and that "Chris [Allen] was absolutely not there that night." *Id.* at p. 2.

## II.

Horan's statement to the investigator does not warrant granting the defendant a new trial. First, there is no indication that the evidence could not have been discovered earlier with due diligence. Text messages introduced at trial showed that Alvarez contacted Allen to purchase drugs on the afternoon of September 15, 2015, the day prior to Alvarez's death. [Record No. 46, p. 150] One of the messages from Alvarez to Allen read: "Hey, Chris, it's Nicole. Could you please help me? I'm sick . . . . Me and Harmony were supposed to split the money, and she took it all, and I ain't seen her since." *Id.* Alvarez further advised Allen that she needed "something to get [her] well," and that she did not "need much." *Id.* at 151. These message were introduced through the testimony of Detective Timothy Graul, who had extracted the messages from Allen's cell phone. *Id.* at p. 150.

Allen suggests in his reply brief that the government withheld exculpatory evidence concerning Horan, but he waived this argument by failing to raise it earlier. *See United States v. Owens*, 458 F. App'x 444, 446 (6th Cir. 2012). Regardless, there is no suggestion that the government possessed any evidence concerning Horan other than the text message introduced through Graul. The defendant does not allege that the government failed to provide the text message during discovery and he raised no objection to the government's introduction of the text message at trial. [Record No. 46, pp. 44, 149]

Although Horan's interview statements may constitute "new evidence," her identity and alleged involvement with Alvarez near the time of her death were known to the defendant. *See id*. at p. 150. Horan's statements indicate that she and Allen were well acquainted. She stated that Allen was a drug dealer she had met through narcotics anonymous and she and Allen "were fighting" on the night in question. [Record No. 51-5] Despite the defendant's failure to interview Horan before the trial, it is likely that, with reasonable diligence, he could have discovered and produced her testimony at trial.

Additionally (and perhaps more importantly), the introduction of Horan's statements would not be likely to produce an acquittal in this case. There are inherent relevance and credibility issues concerning Horan's purported testimony. Horan advised the investigator that she was with Alvarez "the night that [she] died," but she did not provide the date or any other details to establish that it was, in fact, the night prior to Alvarez's death. Horan stated that she did not learn of Alvarez's death until approximately one month later, but she had wondered why Alvarez never contacted her after that night. [Record No. 51-5] Horan was using heroin during the time period she described to the investigator, and her ability to perceive and remember the events were likely altered. For these reasons, it is unlikely that Horan's

statements are sufficient to establish that she was with Alvarez on September 15, 2015. *See United States v. Pierce*, 62 F.3d 818 (6th Cir. 1995) ("The remedy of a new trial seems particularly inappropriate when . . . the newly discovered evidence lacks credibility [and] conflicts directly with believable testimony.").

There is another problem with Horan's version of events. Horan's timeline for "the night that Nicole died" conflicts with substantial evidence introduced at trial. While Horan told the investigator that she dropped Alvarez off at home "extremely late," Alvarez's live-in boyfriend, Raymond Lamb, testified that Alvarez was home when he returned from work at 7:00 p.m. or 8:00 p.m. [Record No. 46, p. 34] Text messages introduced at trial also conflict with Horan's story about Alvarez obtaining drugs from Lily that day. The messages show that Alvarez contacted Allen repeatedly from approximately 3:00 p.m. to 11:00 p.m. on September 15, 2015. Following Alvarez's initial text message seeking something to "get [her] well," Allen advised her that he was in Cincinnati, but would bring her something when he returned to Lexington. *Id.* at p. 151. Inconsistent with Horan's story that Alvarez with using heroin with her, Alvarez sent the defendant a text message at 7:05 p.m. stating, "Are you still coming? Please help me out. I've been puking all day." *Id.* at p. 152.

Evidence of the defendant's guilt was substantial. At 9:52 p.m. on September 15, 2015, Allen sent Alvarez a text message asking, "Can you leave?" *Id.* at p. 153. Alvarez responded that she could not, saying, "I have the baby with me." *Id.* At 10:29 p.m., Allen told Alvarez, "I'll be there in five." *Id.* at p. 154. She advised him that she would be waiting on the porch. *Id.* No additional text messages were exchanged between the two that night. The forensic examination of Alvarez's cell phone indicated that she did not reach out to anyone else to purchase narcotics during this time frame. *Id.*

Alvarez placed the couples' two-week old baby into bed with Lamb and went into the bathroom at around midnight or 1:00 a.m. *Id.* at p. 37. Lamb awoke early the next morning to find Alvarez unresponsive in the couples' bathroom with drug paraphernalia nearby. *Id.* at p. 38. She was taken to the hospital where she was pronounced dead at around 7:00 a.m. on September 16, 2015, as a result of an overdose of fentanyl, heroin, and gabapentin. *Id.* at pp. 93, 100.

At around 11:00 a.m. on September 16, Allen, not knowing that Alvarez had died, sent a text message Alvarez's phone. *Id.* at p. 42. Lamb testified that the message "pertain[ed] to what had happened to her as far as her passing away," so he decided to contact the police. *Id.* at p. 43. Lamb testified that he did not know Allen's identity at the time, but he worked with authorities to continue communicating with Allen (as Alvarez) to purchase additional narcotics. *Id.* at pp. 44-45.

Allen agreed to deliver one gram of heroin to Alvarez and Lamb's apartment on September 17, 2015. *Id.* at pp. 118-19. The defendant showed up at the appointed time whereupon he was arrested by awaiting officers. *Id.* at pp. 120-22. Officers advised Allen that they had Alvarez's phone and he had actually been texting them. They also told him that Alvarez had died from overdosing on the drugs he had previously supplied her. When asked whether he knew that Alvarez had a child, Allen told officers that he had found out "that night." *Id.* at p. 126. An officer asked Allen whether he was referring to the night that he "delivered it to her" and Allen said yes, that she had come out with the baby. [Record No. 47, pp. 99-100] Officers seized approximately 15 grams of heroin, some of which contained fentanyl, digital scales, and $2,271.00 in cash from Allen at the time of his arrest. [*Id.* at pp. 127-28; Record No. 47, p. 26]

**III.**

Considering the foregoing evidence, Harmony Horan's statements, if introduced at trial, would not be likely to produce an acquittal if the case were retried.

Accordingly, for the reasons outlined above, it is hereby

**ORDERED** that Defendant Christopher Allen's motion for a new trial [Record No. 51] is **DENIED**.

This 9th day of March, 2018.

Signed By:

*Danny C. Reeves* DCR

United States District Judge